**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | | |
|---|---|---|---|
| **HENRY SISTRUNK (#2011-0118036),** | ) | | |
| | ) | | |
| **Plaintiff,** | ) | | |
| | ) | **No. 11 C 3974** | |
| | ) | | |
| | ) | **Magistrate Judge Jeffrey Cole** | |
| **MARGHOOB KHAN, M.D.,** | ) | | |
| | ) | | |
| **Defendant.** | ) | | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, an inmate in the custody of the Cook County Department of Corrections, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendant, a jail physician, violated his constitutional rights [and potentially the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, and/or the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*] by acting with deliberate indifference to his medical needs. More specifically, the plaintiff alleges that he was denied a wheelchair that another physician had prescribed for him prior to his arrival at the jail. The plaintiff maintains that he severely injured himself in a fall when the defendant forced him to use crutches instead of the wheelchair. The parties have consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c). This matter is before the court for ruling on the defendant's motion for summary judgment. For the reasons stated in this order, the motion is granted.

### STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Vision Church v. Vill. of Long*

*Grove*, 468 F.3d 975, 988 (7th Cir. 2006).  In determining whether factual issues exist, the court

must view all the evidence and draw all reasonable inferences in the light most favorable to the

non-moving party.  *Weber v. Univ. Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010).

The court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or

determine the truth of the matter.  The only question is whether there is a genuine issue of fact."

*Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009) (citing *Anderson v. Liberty Lobby*,

477 U.S. 242, 249-50 (1986)).

However, Fed. R. Civ. P. 56 "mandates the entry of summary judgment, after adequate

time for discovery and upon motion, against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  "Where the record taken as a whole

could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue

for trial."  *Sarver v. Experian Information Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations

omitted).  "A genuine issue of material fact arises only if sufficient evidence favoring the

nonmoving party exists to permit a jury to return a verdict for that party."  *Egonmwan v. Cook

County Sheriff's Dept.*, 602 F.3d 845, 849 (7th Cir. 2010) (quoting *Faas v. Sears, Roebuck &

Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008)).

### LOCAL RULE 56.1 (N.D. ILL.)

The defendant filed a statement of uncontested material facts pursuant to Local Rule 56.1

(N.D. Ill.).  Together with his motion for summary judgment, the defendant included a "Notice

to *Pro Se* Litigant Opposing Motion for Summary Judgment" [document no. 58], as required by

circuit precedent.  That notice explained in detail the requirements of the Local Rules and

warned the plaintiff that a party's failure to controvert the facts as set forth in the moving party's statement results in those facts being deemed admitted. *See, e.g., Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

> Local Rule 56.1(b) requires a party opposing a motion for summary judgment to file:
>
> > (3) a concise response to the movant's statement that shall contain
> >
> > (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
> >
> > (B) a statement, consisting of short numbered paragraphs, of any additional facts that require denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

L.R. 56.1(b).

The district court may rigorously enforce compliance with Local Rule 56.1. *See, e.g., Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("'Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings'"); *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005). *Pro se* plaintiffs are required to comply with procedural rules. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006); *Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1108 (7th Cir. 2004).

Despite the admonitions stated above, the plaintiff failed to file a proper response to the defendant's statement of uncontested facts. Instead, the plaintiff has provided his own statement of facts, without specifically admitting or refuting any of the defendant's numbered statements. Consequently, the defendant has filed a motion to deem facts admitted.

**-3-**

Because the plaintiff is proceeding *pro se*, the court will grant him considerable leeway and consider the factual assertions he makes in his summary judgment materials. The court has also taken into account the belatedly filed affidavit from inmate Johnny Green. However, the plaintiff's factual statements will be entertained only to the extent that they are supported by the record and/or he could properly testify about the matters asserted. Among other things, a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Fed. R. Evid. 602. In addition, a layperson may not testify about matters involving medical, technical, or other specialized knowledge. *See* Fed. R. Evid. 701, 702.

Given the considerations stated above, the defendant's motion to deem facts admitted is granted, in part, and denied, in part. The court views the defendant's Rule 56.1 statements supported by the record and not properly rebutted by the plaintiff to be true and uncontested. Finally, the defendant's statement of facts has been supplemented with additional facts the plaintiff asserted during his deposition and in his response to the motion for summary judgment.

### FACTS

The plaintiff is a pretrial detainee in the custody of the Cook County Department of Corrections. (Defendant's Exhibit B, Deposition of Henry E. Sistrunk, p. 4.) The defendant, Marghoob Khan, is a medical doctor employed by the jail's Cermak Health Services. (Defendant's Exhibit C, Affidavit of Marghoob Khan, ¶¶ 1, 2.)

Prior to January 2011, the plaintiff enjoyed generally good health, other than suffering from sarcoidosis, an inflammatory condition that sporadically affected his lungs. (Plaintiff's

Dep., pp. 23-24.)  The plaintiff had never before been hospitalized and was not under a doctor's care at the time of his arrest.  (*Id.*)

The plaintiff was arrested on January 17, 2011.  (Plaintiff's Dep., pp. 10, 26.)  During the course of the arrest, the plaintiff sustained an injury to his right leg.  (*Id.*)  The plaintiff asserts that his leg was injured when the police "ran [him] over."  (*Id.*, pp. 26-27; Plaintiff's Exhibit Y, Affidavit of Henry Sistrunk, ¶ 2.)[1]

Following his arrest, the plaintiff was taken to Stroger Hospital for treatment of his leg.  (Plaintiff's Dep., p. 27.).  At the hospital, the plaintiff underwent surgery in two places for a fractured tibia.  (*Id.*, pp. 28, 42; Khan Affidavit, ¶ 3.)  A plaster cast was applied to his leg.  (Plaintiff's Dep., p. 27.)  The plaintiff spent about three weeks in the hospital, in part due to complications from an infected incision.  (*Id.*, p. 28; Plaintiff's Exhibit T, Orthopedics Outpatient Report.)

Although the plaintiff's left leg was not injured, it was his understanding that he was not supposed to put weight on either leg.  (*Id.*, p. 29; Plaintiff's Affidavit, ¶ 6.)  He was provided with a wheelchair while in the hospital.  (Plaintiff's Dep., p. 28.)  At his deposition, the plaintiff testified that his physical therapy consisted of sitting up and elevating his leg, "that kind of thing."  (*Id.*, pp. 29, 32.)  However, the plaintiff's medical records reflect that he also practiced walking with assistive devices such as a walker and crutches.  (Plaintiff's Group Exhibit L, Cook County Health and Hospitals System Physical Therapy Reports).

---

[1]The arresting officers reported that the plaintiff had injured himself by jumping from a window, and not from being struck by the squad car.  (Plaintiff's Exhibit Q, Discharge Summary dated January 31, 2011.)  For purposes of the motion for summary judgment, the court will assume the plaintiff's account to be true.

**-5-**

In an early report, the plaintiff's physical therapist noted that he was practicing ambulation for 30 feet with a walker and for 40 feet on crutches, although he sometimes had to stop due to dizziness and lower extremity pain. (*Id.*) The therapist accordingly recommended transferring the plaintiff to Cermak "at wheel chair level of function (able to transfer independently) in the medical ward with a walker and have him continue to work on gait at Cermak with their pt staff at a slow pace." (*Id.*) The plaintiff's final physical therapy report likewise recommended "wheel chair for now," with "further gait training," although by the time of the plaintiff's discharge he was able to walk "100 feet independently with least assist device." (*Id.*)

The orthopedist made a preliminary finding upon the plaintiff's admission that it was "OK to transfer patient to Cermak with wheelchair." (Plaintiff's Exhibit M, Preliminary Report.) A doctor's discharge similarly dictated, "Pt will need to be discharged with wheelchair and to continue wheelchair while working with PT to advance to assistive device (walker)." (Plaintiff's Exhibits N and O, Doctor's Order dated January 29, 2011; *see also* Plaintiff's Exhibit Q, Discharge Summary).

Some of the reports noted the plaintiff's "poor motivation to improve" (Plaintiff's Exhibit L), and "drug-seeking behavior," coupled with exaggerated complaints of pain. (Plaintiff's Exhibits L, M). The plaintiff was a self-confessed heroin user at the time of his arrest. (Exhibit L; Exhibits N, O (prescriptions for methadone).)

Several of the reports refer, ambiguously, to the plaintiff remaining "nonweightbearing." (*See, e.g.*, Plaintiff's Exhibit Z, Progress Notes.) The documents do not unequivocally indicate

whether the plaintiff was advised to refrain from putting weight on either leg, or just his injured

leg. (*Id.*)

On January 31, 2011, the plaintiff was transferred to the Cook County Jail. (*Id.*) The

plaintiff was taken directly to the Cermak Health Services emergency room upon his arrival at

the jail. (*Id.*, p. 30.) The plaintiff was "triaged" there, in that his vital signs were taken. (*Id.*)

The plaintiff still had his right leg in a cast from the ankle surgery a few days prior. (*Id.*, pp. 28,

41-42.)

Defendant Khan attended to the plaintiff in the emergency room. (*Id.*, p. 31.). The two

discussed the plaintiff's injured leg and his general medical history. (*Id.*, pp. 31-32, 80.) Khan

also made a cursory examination of the plaintiff's leg, without, of course, removing the cast.

(*Id.*, p. 80; Khan Affidavit, ¶ 5; Plaintiff's Affidavit, ¶ 4.) Khan additionally reviewed the

plaintiff's medical records from Stroger Hospital. (Plaintiff's Affidavit, ¶ 5.)

The plaintiff does not recall the specifics of his discourse with Khan. (Plaintiff's Dep.,

pp. 32, 81.) However, the plaintiff does remember that Khan informed him that he was going to

give the plaintiff crutches so that he could get up and start walking. (*Id.*) The plaintiff objected,

telling Khan that a previous physician had told him not to use crutches. (*Id.*; *see also* Plaintiff's

Exhibit A.A.4, Affidavit of Inmate Johnny Green.) The plaintiff also told Khan that he

experienced vertigo when he stood up. (Plaintiff's Affidavit, ¶ 8.) In fact, the plaintiff had a

prescription from the hospital (or at least doctors' recommendations) for a wheelchair.

(Plaintiff's Exhibit L-O.).

Khan ordered crutches anyway, firmly stating that the plaintiff did not need crutches but

that he did need to walk. (Plaintiff's Dep., pp. 33, 35.) Khan prescribed pain and anti-

coagulation medications; he also directed that the plaintiff's dressings be changed daily. (Khan Affidavit, ¶ 5.) The parties dispute whether Khan watched the plaintiff successfully maneuver in crutches.

The plaintiff maintains that a Dr. Capota, an orthopedic specialist at Stroger Hospital, had told him that he should not put any weight on his lower extremities. (*Id.*, p. 83.) Khan, however, believes that it was appropriate for the plaintiff to use crutches because his left leg was uninjured and could bear weight. (Khan Affidavit, ¶ 6.) In Khan's professional opinion, and based on his examination, the plaintiff did not need a wheelchair. (*Id.*) Khan was aware that the plaintiff did not want to use crutches, but nevertheless thought that it was important for him to build up his strength. (*Id.*)

After Khan was through with his consultation, a member of the nursing staff provided the plaintiff with crutches. (*Id.*, p. 35.) The plaintiff balked at accepting them, again insisting that he did not know how to use crutches and noting that the wheelchair was his own, personal property, and not the State or County's. (*Id.*, pp. 35-36.) The nurse ignored the plaintiff's concerns and sent him on his way with the crutches. (*Id.*, p. 36.)

The plaintiff stood with the crutches, then used them to walk four or five feet. (*Id.*, pp. 36-37) As the plaintiff exited through the door of the emergency room, he stumbled and fell. (*Id.*; Green Affidavit.) The plaintiff attributes the fall to being "shaky" because he did not know how to use crutches. (*Id.*, p. 38.) In addition, the plaintiff says that he was still experiencing dizziness whenever he sat up, even several days after the surgery. (*Id.*, pp. 38-39.)

The plaintiff fell forward, hitting his right hand as he landed on the floor, then hitting his left knee, and finally coming down on his right side. (*Id.*, pp. 40-41, 43.) Correctional officers

who were monitoring the hospital waiting room either witnessed the plaintiff's fall or observed him crumpled on the ground; they ran to fetch a member of the medical team. (*Id.*, pp. 51-52.) The plaintiff was questioned about the fall and then helped into a wheelchair. (*Id.*, pp. 53-54.)

Afterwards, the plaintiff was taken to his housing unit in the medical ward at Cermak. (*Id.*, pp. 53-54; Khan Affidavit, ¶ 5.) Because the plaintiff was assigned to a hospital bed, he was able to make medical requests whenever needed. (Plaintiff's Dep., p. 61.) The medical staff at Cermak is on call twenty-four hours a day. (*Id.*) The plaintiff remained at Cermak for about five or six months; he was then transferred to a general population dormitory. (*Id.*, pp. 11, 60.) The plaintiff saw a nurse every day while housed at Cermak. (*Id.*, p. 61.) There were doctors there every day as well. (*Id.*) Although the plaintiff did not speak to a doctor every day, he "absolutely" could have made a medical request. (*Id.*)

The plaintiff claims to have injured his right hand and his back when he fell in January 2011; he also believes that he may have re-injured [or exacerbated the injuries to] his right leg. (*Id.*, pp. 54, 56.) The plaintiff has lingering pain in his hand to this day, still wears a bandage, and cannot lift heavy objects. (*Id.*, p. 55.) The plaintiff's wrist was diagnosed with carpal tunnel syndrome prior to his arrival at the jail. (Plaintiff's Exhibit U, "Final Report.") The plaintiff's hand may need surgery. (*Id.*, pp. 55-56.) X-rays taken at the jail revealed no back injuries, and physicians were unable to find anything wrong with the plaintiff's back. (Plaintiff's Dep., p. 55.) The plaintiff's knees were also x-rayed even though he did not complain of a knee injury. (*Id.*)

Since the date of his fall, the plaintiff has had to undergo six surgeries to his right leg. (*Id.*, p. 58-60.) The plaintiff is unsure about what the reasons are for the surgeries; "[t]hey just

tell [him] they are going to do a procedure." (*Id.*, pp. 58, 60). The plaintiff does not know

whether the original, arrest-related injuries or the subsequent fall are the reason for his needing

multiple surgeries. (*Id.*, pp. 83-84.) Prior to his discharge from the hospital and transfer to the

jail, doctors were already assessing the need for additional reparative operations. (Plaintiff's

Exhibits Q, T, U, Group Exhibit X.)

Every doctor the plaintiff has seen has told him that his leg has "shifted," and that the

bones will have to be realigned. (*Id.*, p. 83.) The plaintiff continues to receive care and

treatment for his injured leg. (*Id.*, pp. 61, 66-67, 70-72, 73-75.)

Although the plaintiff would prefer to see another physician, Khan has rendered

treatment "quite a few times" since the date of the events giving rise to this lawsuit. (Plaintiff's

Dep., pp. 62-63.)

The plaintiff has remained in a wheelchair ever since the date of the accident underlying

this lawsuit. (Plaintiff's Statement of Fact in Opposition to Defendant's Motion for Summary

Judgment, ¶ 33.)

**ANALYSIS**

No outcome-dispositive facts are in dispute, and the defendant has established that he is

entitled to judgment as a matter of law. The plaintiff has failed to demonstrate that a triable

issue exists as to whether he had a serious medical need for a wheelchair, as opposed to crutches.

Even viewing the facts in the light most favorable to the plaintiff, the record does not support an

inference that the defendant acted with deliberate indifference to his serious medical needs.

Correctional officials and health care providers may not act with deliberate indifference

to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Fields v.*

**-10-**

*Smith*, 653 F.3d 550, 554 (7th Cir. 2011). In analyzing deliberate indifference claims, the court examines the totality of an inmate's medical care. *See, e.g., Walker v. Peters*, 233 F. 3d 494, 501 (7th Cir. 2002); *Smith v. Alvarez*, No. 11 C 0190, 2012 WL 4888480, *7 (N.D. Ill. Oct. 15, 2012) (Bucklo, J.). Deliberate indifference has both an objective and a subjective element: the inmate must have an objectively serious medical condition, and the defendant must be subjectively aware of and consciously disregard the inmate's medical need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Estelle*, 429 U.S. at 103-04; *see also Roe v. Elyea*, 631 F.3d 843, 862 (7th Cir. 2011). In this case, the plaintiff cannot satisfy either prong.

## A. No Objectively Serious Medical Need for Crutches

The court will assume for purposes of this motion that the plaintiff's injured and infected leg constituted a "serious" medical condition. A serious medical condition is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would perceive the need for a doctor's attention. *See Edwards v. Snyder*, 478 F.3d 827, 830-831 (7th Cir. 2007); *Foelker v. Outagamie County*, 394 F.3d 510, 512-13 (7th Cir. 2005). A condition is also objectively serious if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008) (citing *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)). Nevertheless, the plaintiff has not shown that his perceived need for a wheelchair amounted to a serious medical need.

Even though the plaintiff's physical therapist and hospital physicians recommended that he be placed in a wheelchair "for now," the evidence simply does not support a finding that such an accommodation was medically necessary. It is uncontested that the plaintiff's left leg was

**-11-**

uninjured and could support weight.  The records also show the wheelchair recommendation was preliminary to more active ambulation by the plaintiff. *See supra* at 6.   Therefore, even if the plaintiff continued to suffer from some dizziness and weakness, it was appropriate – even desirable – for him to start using crutches to ambulate, as the records showed he had in fact done. *See supra* at 6.

The plaintiff's preference to use a wheelchair is not constitutionally protected.  Questions about what forms of treatment are warranted are a "classic example of a matter for medical judgment."  *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996) (quoting *Estelle v. Gamble*, 429 U.S. at 97).  A prisoner has no constitutionally protected right to the treatment of his choice.  *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *see also Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (prison physician entitled to summary judgment when he decided to treat the plaintiff's chronic pain with non-narcotic pain medications and other drugs instead of the Oxycontin the plaintiff had been taking prior to his incarceration).  A prisoner is constitutionally entitled only to "adequate medical care," not "unqualified access to health care."  *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006).

While the plaintiff contends that several physicians told him that he should remain in a wheelchair, and that he was not to put any weight on his left leg, those assertions are hearsay, and thus inadmissible.  *Sow v. Fortville Police Dept.*, 636 F.3d 293 (7th Cir. 2011).

The decision to place the plaintiff on crutches is not actionable under 42 U.S.C. § 1983. "There is not one 'proper' way to practice medicine in prison, but rather a range of acceptable courses based on prevailing standards in the field."  *Holloway*, 700 F.3d at 1073 (quoting *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008)).  The courts do "not suggest that prison

doctors must always defer to the judgment of a doctor who treated an inmate prior to his detention." *Holloway*, 700 F.3d at 1074. Rather, the prison physician, as the inmate's acting primary care doctor, is free to make his own, independent medical determination as to the necessity of certain treatments or medications, so long as the determination is based on the physician's professional judgment and does not go against accepted professional standards. *Id.* (citations omitted). The plaintiff has adduced no admissible evidence demonstrating that a wheelchair was a medical necessity.

## B. No Deliberate Indifference

Nor is there a disputed issue of material fact regarding the subjective component. To establish deliberate indifference, a prisoner must demonstrate that the defendant in question was aware of, and consciously disregarded, the inmate's medical need. *Farmer*, 511 U.S. at 837; *Estelle*, 429 U.S. at 103-04; *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). The fact that a prisoner has received **some** medical treatment does not necessarily defeat his claim; deliberate indifference to a serious medical need can be manifested by "blatantly inappropriate" treatment, *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005) (emphasis in original), by "woefully inadequate action," or no action at all. *Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999); *Allen v. Wexford Health Sources, Inc.*, No. 11 C 3834, 2011 WL 2463544, *1 (N.D. Ill. Jun. 17, 2011) (Kocoras, J.).

Here, the defendant has explained that, based on his "medical education, experience and evaluation of Mr. Sistrunk's condition," he determined that the plaintiff could use crutches to walk and did not need a wheelchair. (Khan Affidavit, ¶ 6.) Khan acknowledges that the plaintiff did not want to use crutches, but the doctor nevertheless believed that it was important for the

plaintiff to start building up his strength. (*Id.*) A health care provider acting in his professional capacity "may be held to have displayed deliberate indifference only if the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (citing *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008)).

The decision to issue the plaintiff crutches instead of a wheelchair when he had one good leg was not so far afield as to "demonstrate[d] an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (quoting *Roe*, *supra*). Neither medical malpractice nor a mere disagreement with a doctor's medical judgment amounts to deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) (citing *Estelle*, 429 U.S. at 106). It is a basic truism that "the wheelchair is not your friend." People who do not work to leave a wheelchair often find that they remain forever confined to the wheelchair. *See also Bailey v. City of Chicago*, No. 08 C 4441, 2012 WL 850741, *2 (N.D. Ill. Mar. 9, 2012) (Marovich, J.) (noting that crutches were prescribed instead of a wheelchair in order to prevent the formation of a blood clot). Even though the defendant might have prescribed a different course, it was not beyond the pale for him to insist that the plaintiff accelerate the recovery process by walking.

The court need not resolve the parties' dispute as to whether Khan observed the plaintiff successfully maneuver in crutches. The court may grant summary judgment if facts are in dispute, so long as those facts are not outcome determinative. *See, e.g., Montgomery v.*

*American Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010); *In re NeoPharm, Inc. Securities Litigation*, 705 F. Supp. 2d 946, 962 (N.D. Ill. 2010) (Lefkow, J.).  Here, the court finds the dispute to be over a non-material fact.

Even if Dr. Khan failed to ensure that the plaintiff could use crutches without effort, any oversight did not rise to the level of a constitutional violation.  Deliberate indifference requires a showing of "more than mere or gross negligence."  *Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006) (quoting *Matos ex rel. Matos v. O'Sullivan*, 335 F.3d 553, 557 (7th Cir. 2003)); *Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 529 (7th Cir. 2000).  The required showing is "something approaching a total unconcern for [the prisoner's] welfare in the face of serious risks."  *Collins*, 462 F.3d at 762 (quoting *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992)).

To establish deliberate indifference, a plaintiff must present evidence that an individual defendant intentionally disregarded the known risk to inmate health or safety.  *Matos*, 335 F.3d at 557; *Minix v. Canarecci*, 597 F.3d 824, 830-31 (7th Cir. 2010).  A defendant with knowledge of a risk need not "take perfect action or even reasonable action[,] ... his action must be **reckless** before § 1983 liability can be found."  *Collins*, 462 F.3d at 762 (quoting *Cavalieri v. Shepard*, 321 F.3d 616, 622 (7th Cir. 2003) (emphasis added)).  Crutches are not a particularly complex contraption, and the plaintiff had already successfully practiced using them while in the hospital. *See supra* at 6.  Failing to further train the plaintiff in the use of crutches was not an omission of constitutional significance.

## C. No Liability for Plaintiff's Fall

It is regrettable that the plaintiff fell and injured himself almost immediately after getting up on crutches. However, even if, in hindsight, it would have been advisable for the plaintiff to have worked himself up to crutches, the risk of injury was not so high as to implicate the Constitution. The courts have routinely found such minor, potential hazards not to be sufficiently serious to rise to the level of a constitutional violation. For example, in *Christopher v. Buss*, 384 F.3d 879 (7th Cir. 2004), an inmate claimed that he was injured during a ball game when a baseball bounced off of a "protrusive lip" on the softball field and hit him in the eye. The Seventh Circuit affirmed dismissal upon initial screening, concluding that the defect in the field was not an excessive risk to inmate safety. As the Court of Appeals explained: "An "objectively 'sufficiently serious'" risk ... is one that society considers so grave that to expose any unwilling individual to it would offend contemporary standards of decency." *Christopher*, 384 F.3d at 882 (internal citations omitted).

Similarly, in *Murphy v. Walker*, 51 F.3d 714, 721 (7th Cir. 1995), dismissal of certain claims, including the lack of handrails in the shower, was upheld on review. Wet and slippery floors likewise do not implicate the Constitution. *Compare LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993) ("slippery prison floors ... do not state even an arguable claim for cruel and unusual punishment"); *see also Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("an inch or two" of accumulated water in the shower was not "an excessive risk to inmate health or safety"); *McMillen v. Tanner*, No. 12 C 5110, 2012 WL 2839808, *2 (N.D. Ill., Jul. 6, 2012) (Lindberg, J.) (same). Even shocks from exposed wiring have been found to be an easily avoided, "unpleasant inconvenience." *See Morissette v. Peters*, 45 F.3d 1119, 1124 (7th Cir. 1995).

**-16-**

Walking on crutches is not so inherently dangerous an activity as to implicate the Fourteenth Amendment.

**D. Any Claim that Plaintiff Was Denied Needed Medical Care After He Fell Is Untimely**

In response to the defendant's motion for summary judgment, the plaintiff adds a claim that he was denied medical care after he fell. First, any such claim is untimely. The plaintiff expressly stated at his deposition that his "only complaint" against Khan was that he took away the plaintiff's wheelchair. (Plaintiff's Dep., p. 75.) The summary judgment stage "is too late in the day to be adding new claims." *Zeidler v. A & W Restaurants, Inc.*, 219 Fed. App'x. 495, 499 (7th Cir. 2007) (quoting *Auston v. Schubnell*, 116 F.3d 251, 255 (7th Cir. 1997)). A plaintiff cannot advance new arguments in response to a motion for summary judgment when no such claims were raised prior to summary judgment. *Williams v. City of Chicago*, No. 10 C 6234, 2012 WL 4434678, *5 (N.D. Ill. Sep. 19, 2012) (Norgle, J.) (collecting cases); *see also Nelson v. Advocate Bethany Hosp.*, No. 08 C 2905, 2009 WL 4429767, *6 (N.D. Ill. Nov. 23, 2009) (Kennelly, J.) (same).

In any event, the record is devoid of evidence that Dr. Khan was even aware that the plaintiff had fallen, let alone that the latter had a serious medical need for treatment of his injuries. According to the plaintiff, another doctor and an inmate worker helped him after he fell; there is no indication that Khan was at the scene. (*See* Plaintiff's Affidavit, ¶ 11; Plaintiff's Dep., p. 53.) Moreover, the plaintiff contradicts his assertion that he received no medical care by stating in his affidavit that he received treatment and that x-rays were taken the next day. (Plaintiff's Affidavit, ¶ 13.) The plaintiff cannot sue the defendant for denying him medical assistance after he fell.

**-17-**

In sum, the defendant's motion for summary judgment is granted on the plaintiff's Fourteenth Amendment medical claim. Inmates are not constitutionally entitled either to "demand specific care" or even to receive the "best care possible;" rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011) (citing *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997)). The plaintiff's evidence fails to support an inference that the defendant acted with deliberate indifference in consigning the plaintiff to crutches instead of a wheelchair.

**E. No Tenable Claim Under the Americans with Disabilities Act or the Rehabilitation Act**

Finally, the court discerns no violation of the plaintiff's federal statutory rights. In conducting its required initial review under 28 U.S.C. § 1915, the court noted that in addition to his constitutional claim, the plaintiff might have a potential cause of action under the Americans with Disabilities Act, , 42 U.S.C. § 12101, *et seq.* [hereinafter, the "ADA"]. *See* Minute Order of June 15, 2011 (Norgle, J.). Since that time, the Seventh Circuit has observed that the relief available under the provisions of the ADA and the Rehabilitation Act, 29 U.S.C. § 794, *et seq.*, is "coextensive," but that suits under the Rehabilitation Act avoid the "thorny question" of sovereign immunity. *See Jaros v. Illinois Dept. of Corrections*, 684 F.3d 667, 671-72 (7th Cir. 2012); *see also Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012) (where a complaint alleged only an ADA violation, liberal construction of the *pro se* supported a cause of action under the Rehabilitation Act). However, the more fully developed record establishes that the plaintiff has no viable claim under either statute.

Under both the ADA and the Rehabilitation Act, prisons must make reasonable accommodations for inmates with disabilities. *Jaros*, 684 F.3d at 672. But in this case, for the

reasons discussed in preceding paragraphs, it was not "unreasonable" in the statutory sense for

Dr. Khan to have prescribed crutches rather than a wheelchair. It must be emphasized that

neither the ADA nor the Rehabilitation Act creates a federal remedy for medical malpractice, *see*

*Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996); *Olson v. Meyers*, No. 01 C 50023, 2004

WL 1280353, *2 (N.D. Ill. Jun. 8, 2004) (Reinhard, J.), which is what is essentially alleged here.

This case boils down to a disagreement between the plaintiff and his doctor over what was the

best course of treatment. The plaintiff's dissatisfaction with the defendant's decision is not

actionable under the Civil Rights Act, the Americans with Disabilities Act, or the Rehabilitation

Act.

**CONCLUSION**

For the foregoing reasons, the defendant's motion for summary judgment is granted.

Viewing the record in the light most favorable to the plaintiff, no reasonable person could find

that the defendant either (a) acted with deliberate indifference to plaintiff's serious medical

needs, or (b) failed to provide reasonable accommodations for his disability.

If the plaintiff wishes to appeal this final order, he may file a notice of appeal with this

court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to

appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See*

Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the

$455.00 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Illinois Dept. of*

*Corrections*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-

meritorious, the plaintiff may also be assessed a "strike" under 28 U.S.C. § 1915(g). The

plaintiff is warned that, pursuant to that statute, if a prisoner has had a total of three federal cases

**-19-**

or appeals dismissed as frivolous, malicious, or failing to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury. *Id.*

IT IS THEREFORE ORDERED that the defendant's motion to strike and to deem facts admitted [#76] is granted in part and denied in part. The plaintiff's motion to include Exhibit A.A.4 [#78] is granted. The defendant's motion for summary judgment [#57] is granted. The clerk is directed to enter judgment in favor of the defendant pursuant to Fed. R. Civ. P. 56. The case is terminated. The plaintiff's motion for access to law library [#79] is denied as moot.

ENTERED:_____
UNITED STATES MAGISTRATE JUDGE

DATE: 1/24/13